J-S54029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.H. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| L.H. | |
| Appellant | No. 244 WDA 2016 |

Appeal from the Order January 19, 2016
In the Court of Common Pleas of Fayette County
Civil Division at No(s): No. 2361 of 2014, G.D.

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 26, 2016**

L.H. ("Mother") appeals from the January 19, 2016 custody order that denied her petition for relocation and custody modification with respect to her son, G.H., born in March of 2002, and her daughter, C.H., born in October of 2004.  We vacate and remand in accordance with the following memorandum.[1]

_____

[1] On June 7, 2016, Mother filed an application for relief--motion to strike, wherein she requests that this Court issue an order striking the appellee brief of J.H. ("Father") for being untimely filed.  Mother asserts that Father's counsel indicated in the certificate of service attached to the brief that it was served *via* first class mail on the due date established by this Court's briefing schedule, *i.e.*, April 26, 2016.  However, Mother asserts that Father's counsel filed the appellee brief on May 2, 2016, and that she received it on May 4, 2016.  We discern no prejudice to Mother by Father's untimely filing of his appellee brief.  Therefore, we deny Mother's application for relief.

Mother and Father, the natural parents of G.H. and C.H., were married in 2002. N.T., 9/18/15, at 97. In February of 2014, the family moved from New Hampshire to Uniontown, Fayette County, Pennsylvania, where they resided with Father's parents in their home.[2] *Id.* at 99, 165. The parties enrolled G.H. and C.H. in the Laurel Highlands School District. *Id.* at 101. In November of 2014, Mother and Father separated. On December 19, 2014, following a complaint for custody filed by Father, the trial court issued an agreed-upon order, granting Mother and Father shared legal and equally shared physical custody on an alternating weekly basis.

On June 20, 2015, Mother married J.D.D. ("Stepfather") and moved to Sharpsburg, in Allegheny County. *Id.* at 96, 131-132. The parties modified the custody order at that time, without court intervention, with Father exercising primary physical custody, and Mother exercising partial physical custody every weekend.

On August 3, 2015, Mother filed a "petition for relocation and custody modification." In the petition, Mother asserted that she currently lives in the Fox Chapel School District in Sharpsburg, which is located "a short distance outside of the City of Pittsburgh" and approximately 70 minutes from Father's residence in Uniontown, in Fayette County. Petition, 8/3/15, at ¶¶

_____

[2] In the fall of 2002, the parties, along with G.H., who was less than a year old, moved from Pennsylvania to Maine and then to New Hampshire. They did not return to Pennsylvania until 2014. N.T., 9/18/15, at 75-77.

1, 19. In addition, Mother asserted that Father has a history of "psychotic episodes", one of which resulted in the court granting a Protection from Abuse ("PFA") order on her behalf and in criminal charges currently pending against him. *Id.* at ¶¶ 12-14. Finally, Mother asserted that Father has attempted to interfere with her custodial time. Mother requested primary physical custody.

On August 17, 2015, Father filed a counter-affidavit wherein he objected to both relocation and modification of the custody order. A hearing occurred on September 18, 2015. Mother testified that she requested primary physical custody so that G.H. and C.H. can attend the Fox Chapel School District, which she described as "a really top-rated school." N.T., 9/18/15, at 102. She acknowledged that C.H. has done well academically in the Laurel Highlands School District. *Id.* at 103. Mother testified that G.H. used to do very well academically, and he had been in honors classes in the Laurel Highlands School District. *Id.* at 104. She implied that his academic achievements have decreased since living in Pennsylvania. *Id.*

G.H., then age thirteen and in eighth grade, testified *in camera* that he used to be an honors student, but not at present. *Id.* at 20. He testified as follows on inquiry by the trial court:

> THE COURT: [I]t seems like you been kind of stuck in the middle here with your parents, and that's a bad place to be. What concerns me is that you were an honors student and now you seem like you're a very sensitive young man and sometimes your grades fail when you have so much going on emotionally in your life. . . .

- 3 -

. . .

THE WITNESS: I get anxious a lot at my mom's house. I get, like, hyper anxious, like, I can't think well, and it's mainly because, it's like, why am I here? I don't understand any of this. That's my main issue with focusing mostly.

THE COURT: And you feel that that is carrying over into your school [work]?

THE WITNESS: Yeah.

*Id.* at 27-28.

G.H. resided in his paternal grandparents' home, along with Father and C.H. He explained that he wants to continue residing with Father, and that he is not "a fan of [Stepfather] and his kids."[3,4] *Id.* at 12. He expressed the desire for Father to have sole physical custody because, in part, "my mom usually never has plans that consider me on the weekends." *Id.* at 14. G.H. explained that Mother did not tell him and his sister that she was getting married, and that she did so "without even considering us, I mean, it kind of hurts." *Id.* at 15.

_____

[3] Father testified that the weekend following the custody hearing he will be moving to a new home within a mile of the paternal grandparents' home and also within the Laurel Highlands School District. N.T., 9/18/15, at 58-59.

[4] Stepfather testified that he has one son, age seven, and two daughters, ages nine and twelve. N.T., 9/18/15, at 43. He has partial physical custody of his children on alternating weekends and on alternating Wednesday evenings for dinner. *Id.*

C.H., then nearly eleven years old and in sixth grade, also testified *in camera* that she does not "really enjoy going [to Mother's house]. It's not very comfortable. I'm not used to the kids and I don't like it there." *Id.* at 35. C.H. explained, "I haven't known those people for very long at all and I don't have my own room, I share one with my brother and, like, I just don't feel comfortable."[5] *Id.* She explained that she would also like to reside with Father because "I love my school and my father always has time to -- he goes to work, but when he gets home I enjoy being with him, he's fun, and I don't feel comfortable in Pittsburgh." *Id.* at 38.

On January 19, 2016, the trial court issued the following order: "the Petition to Relocate is **DENIED**. As the parties have modified by themselves the present Custody Order due to the distance now between the parties, the Court will upon presentation, sign a new Order reflecting the current custody agreement." Order, 1/19/16 (emphasis in original).

On February 16, 2016, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On that same date, Mother filed a motion for reconsideration. By opinion and order dated February 23, 2016, the trial court, after full consideration of Mother's claims, denied the motion.

---

[5] G.H. and C.H. testified that their bedroom is in the basement at Mother's house. N.T., 9/18/15, at 9, 35. Mother testified that she and Stepfather are considering moving to a larger house that would also be within the Fox Chapel School District. *Id.* at 110.

On appeal, Mother presents the following issues for our review:

I. Whether the [t]rial [c]ourt abused its discretion in failing to adequately address all custody factors pursuant to 23 Pa.C.S. § 5328(a)[?]

II. Whether the [t]rial [c]ourt abused its discretion in failing to adequately address all custody factors pursuant to 23 Pa.C.S. § 5337(h)[?]

III. Whether the [t]rial [c]ourt abused its discretion in failing to dispose of Mother's claim for custody modification[?]

IV. Whether the [t]rial [c]ourt erred in its factual findings not supported by the record[?]

Mother's brief at 4.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

Instantly, we begin with Mother's first and third issues on appeal, which are related. She argues that the trial court committed an error of law in failing to address the 23 Pa.C.S.A. § 5328(a) factors and her request to modify the existing custody order by granting her primary physical custody.

This Court has explained as follows.

> When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D.*, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id.*
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, __ Pa. __, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, __ Pa. __, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

The relevant statutory provisions are as follows.

**§ 5328.  Factors to consider when awarding custody.**

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

**§ 5337. Relocation.**

. . .

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

In its opinion accompanying the subject order, the trial court expressly considered all of the Section 5337(h) relocation factors, but none of the Section 5328(a) custody factors. The court explained in its opinion addressing Mother's petition for reconsideration that, "since this was a relocation request interpreted to refer to a modification of custody in the event relocation was granted," it properly did not consider the Section

- 10 -

5328(a) factors.  Trial Court Opinion, 2/23/16, at 3.  We are constrained to disagree.

In **D.K. v. S.P.K.**, 102 A.3d 467 (Pa. Super. 2014), the trial court issued a custody order granting the mother primary physical custody of the parties' children after considering all of the Section 5328(a) custody factors and all of the Section 5337(h) relocation factors.  The parties had relocated their residences following their separation and divorce.  The mother initiated the custody action, at which time she resided in North Carolina, and the father in Pittsburgh, Pennsylvania.  On appeal, the father argued that the court erred by failing to dismiss the mother's custody complaint because she did not comply with the relocation procedure in Section 5337(c) by providing him with timely notice of her intention to relocate the children.  We rejected the father's argument.

We explained in **D.K.** that, "section 5337 is designed to give notice to a party with custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights."  **Id.** at 473.  We held as follows.

> [I]n a case such as this, which involves a custody determination where neither [parent] is relocating and only the children stand to move to a significantly distant location, the relocation provisions of the Child Custody Act, 23 Pa.C.S.A. § 5337, are not *per se* triggered and the notice requirement of section 5337(c) does not apply.  However, in such cases, the trial court shall consider the relevant factors set forth in section 5337(h) insofar

- 11 -

as they impact the final determination of the best interests of the children.

*Id.* at 468.

In this case, despite Mother pleading relocation, we conclude that her request before the court did not "*per se* trigger" the Section 5337 provisions. When Mother filed the subject petition on August 3, 2015, she was already living in Sharpsburg. Further, she and Father had modified the existing custody order due to her relocation whereby Father exercised primary physical custody, and she exercised partial physical custody every weekend. As such, Mother's request was for primary physical custody of G.H. and C.H., which would necessitate their change in school districts, and her request involved *only* the relocation of the children. Therefore, we conclude that the trial court erred as a matter of law by failing to consider the Section 5328(a) custody factors and thereby failing to decide Mother's custody modification request. *See D.K. v. S.P.K.*, *supra*; *see also A.V. v. S.T.*, 87 A.3d at 822.

We observe that Mother's request for modification of the custody order involved the change of residence of G.H. and C.H. to a distant location, which would impact their physical, educational, and/or emotional development, who were then thirteen and nearly eleven years old, and who implied in their testimony having difficulty adjusting to Mother's new marriage and family dynamic. Therefore, we recognize, pursuant to *D.K.*, *supra*, that the trial court was required to "consider the relevant factors of section 5337(h) in [its] section 5328(a) best interest analysis." *D.K. v.*

- 12 -

**S.P.K.**, 102 A.3d at 477-478. As we explained in **D.K.**, "several of the relevant factors of section 5337(h) are encompassed, directly or implicitly, by the custody factors listed in section 5328(a). Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16)." **Id.** at 478. We hold in this case only that the trial court erred by considering the Section 5337(h) factors to the exclusion of all of the Section 5328(a) factors.

Accordingly, we vacate the January 19, 2016 custody order. We remand this matter to the trial court to consider Mother's request for primary physical custody. In doing so, the trial court shall consider all of the Section 5328(a) custody factors and any relevant Section 5337(h) relocation factor and delineate the reasons for its decision pursuant to relevant statutory and case law. **See A.V. v. S.T.**, **supra**; **D.K. v. S.P.K.**, **supra**; 23 Pa.C.S.A. § 5323(d). The trial court may receive additional testimony presented by the parties, if necessary, in thoroughly considering all of the Section 5328(a) custody factors and any relevant Section 5337(h) relocation factor.

Order vacated. Case remanded for further proceedings. Application for Relief -- Motion to Strike denied. Jurisdiction relinquished.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2016

---

[6] Based on this disposition, we need not address the remaining issues Mother raises in her brief.